IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
|         Respondent | ) Criminal No. 16-cr-055 |
|     v. | ) (Case No. 2:16-CR-00055-DWA |
| | ) (The Honorable Donetta W. Ambrose) |
| SIMON TUSHA | ) |
|         Petitioner. | |

MOTION PURSUANT TO 18 U.S.C. 3582 FOR MODIFICATION OF

SENTENCE OR IN THE ALTERNATIVE FOR AN ORDER REQUIRING THE BUREAU OF

PRISONS TO PROVIDE IMMEDIATE TREATMENT OF PETITIONER'S

<u>LIFE THREATENING HEALTH CONDITIONS</u>

    Comes now, Simon Tusha, Petitioner, who in light of his multiple life-threatening cancer diagnoses, moves the Court for an Order modifying his sentence, or one requiring the Bureau of Prisons (BOP) to make immediate arrangements with Petitioner's current treating physician at Johns Hopkins Medical Center in Baltimore MD, for treatment of his recurring and new cancers, in support of which he avers the following:

I

<u>MEDICAL HISTORY TIMELINE</u>

4/11/18 – Surgery for "Radical Prostatectomy" for Prostate Cancer (see Exhibit C letter 3/6/19 & Exhibit B).

11/27/18 – Biopsy for suspected Melanoma (See Exhibit A).

2/21/19 – Surgery for Malignant Melanoma (See Exhibit A, 1/7/19 letter, page 5, and Exhibit C. 3/14/19 letter) with subsequent follow-up visits to date of Tusha's self-surrender to Loretto, FPC.

2/28/19 – Colonoscopy (See Exhibit C 5/24/19 letter).

5/6/19 – Second surgery for Malignant Melanoma with other areas reported for suspected metastasis or spreading to other areas in Tusha's body. (Exhibit C 5/24/19 letter).

5/13/19 – Self-surrender to Loretto FPC to commence a 21 month sentence for tax evasion.

5/15/19 – Stitches removed by nurse at Loretto, FPC. Tusha requested incontinence pad and support underwear, which he did not receive until a week or so later. The site where the malignant melanoma was removed from Tusha's skull was visibly bleeding until mid-July with <u>no</u> follow-up care or outside appointments made for his medical care.

5/16/19 – PA Burke reviewed Tusha's medical records and confirmed his multiple cancers and critical condition. PA Burke verbally informed him that the institution cannot treat him and that he would be sent shortly to outside Oncology, Urology and Dermatology physicians for care. By 8/14/19, no appointments had been made and no medical follow-up had occurred despite acknowledgement of his multiple cancers and medical issues.

5/21/19 – Tusha informed Camp Case Manager, Mr. Bagley, of his medical condition. Mr. Bagley told him to request "Compassionate Release."

5/23/19 – Tusha sent an electronic request for "Compassionate Release." The computer response said it was sent to RIS (reduction in sentence) coordinator. As of this date, no response had been received related to the request for Compassionate Release.

5/24/19 – Followed-up with a hard copy request for Compassionate Release with copies of medical records and medical letters from treating physicians to prove Tusha's dire medical condition. To this date, no response had been received. (Exhibit C)

6/5/19 – Tusha submitted an Administrative Remedy Informal Resolution which was received on 6/6/19.

6/7/19 – Sent Inmate Request to Staff requesting transfer per BOP Policy Statement 7310.4 to home confinement to have urgent medical follow-up per Johns Hopkins treating physicians (Tusha has health insurance and agreed to accept full financial responsibility for my future medical expenses and care). In the alternative, requesting transfer to home confinement per 18 U.S.C. § 3621(b). Third alternative grounds for relief of home confinement per BOP Policy Statement 7320.01. (See Exhibit D).

6/16/19 – Appeal denial of Inmate Request to Staff to Unit Manager. (See Exhibit E).

7/15/19 – Administrative Remedy Informal Resolution to this denial, with Response on 7/18/19 stating that Tusha would be given relief through other request. (See Exhibit F).

7/21/19 – Returned denial to Tusha and asked if he wanted to file a BP-9.

6/8/19 – Letter and Response given by Norman Weidlich, Health Services Administrator which fully confirms Tusha's current medical condition (Exhibit G):

"You arrived at FCI Loretto on May 13, 2019, with a history of prostate cancer s/p prostatectomy, incontinence, melanoma, colorectal polyps, and Asthma. Your Primary Care Provider (PCP) evaluated you for a history and physical on May 16, 2019, advised you to furnish information so your medical records can be obtained, and submitted a consultation for an evaluation by a Dermatologist to follow you for a history of melanoma. You were evaluated by the Clinical Director (CD) on June 7, 2019. The CD submitted consultations for your evaluation by Oncology due to your personal history of Melanoma/Prostate Cancer and strong family history of Cancer, and Urology to be followed for recent history of Prostatectomy."

** Despite the acknowledgement of all of his urgent medical conditions and cancers, as of this date – 8/14/19 – no follow-up visit had been done and no further communication about any follow-up or care had been given.

6/20/19 – Correspondence from Dr. Paul N. Manson, Professor of Surgery and a treating physician from Johns Hopkins, sent to Tusha at FPC Loretto (Exhibit H):

"This 46 y.o. male has had recent surgery on 2/21/19 and 5/6/19 for malignant melanoma and had significant lesions which will require close follow-up every three months. In addition, he recently had a laparoscopic radical prostatectomy for prostate cancer. Each of these conditions <u>requires close follow-up</u> every three months, and <u>he must be seen frequently and regularly to accomplish the follow-up required</u>."

** Despite the <u>required follow-up</u> that is medically necessary according to Johns Hopkins and <u>acknowledged</u> by the Health Services Administrator, <u>absolutely no follow-up</u> had occurred over three months.

7/21/19 – BP-9 sent to Warden Moser requesting transfer to home confinement under one of four possible grounds:

1. BOP Policy Statement 7320.01 dated 9/6/95 at paragraph 1(C);
2. BOP Policy Statement 7310.04 dated 12/16/98 at paragraph 9.(4);
3. 18 U.S.C. § 3621(b); and/or
4. The Compassionate Release under the First Step Act or other policy.

7/25/19 – BP-9 Notice regarding acknowledgement of receipt received. (Exhibit I).

7/26/19 – Oncology & Urology Consults supposedly approved. To date, no consult or other appointment had been done. No medical consult or information had been provided to Tusha.

8/1/19 – Sick Call request sent due to increasing scrotum pain. Greatly concerned about metastasis spreading cancer to scrotum or other areas on Tusha's part.

8/2/19 – PA Bregg prescribed "Cipro" for a potential infection despite no rise in temperature.

8/13/19 – PA Burke discussed with Tusha his situation and confirmed need to see outside doctors, need for support-compression underwear. Tusha provided his ongoing concerns about falls, bleeding, pain in testicles, incontinence, need for supplies as well as his concern about <u>no outside doctor visits</u>. (Exhibit J).

8/13/19 – BP-9 Response received. The response only addressed Compassionate Release and that the review is awaiting completion. <u>No response</u> is given to items ## 1-3 above on policy statements and statutory basis for relief. (Exhibit K).

8/14/19 – One vial of blood was drawn.

8/14/19 – Submitted Regional Administrative Remedy Appeal for denial of relief per Request for Administrative Remedy response received 8/12/19. (Exhibit L).

<u>To date, as of 8/14/19, no medical appointments or consultations have occurred.</u> Tusha states, "I am a nonviolent offender in prison for the crime of "conspiracy to commit tax evasion" because I relied on my lawyer and accountant for tax advice. I do not want to die in prison. I would like to be released to my family and children so I can get urgent cancer follow-up and care. I am not a danger to anyone nor society. I can also be fully responsible financially for my future medical care."

II

<u>BOP APPEAL TIME-LINE</u>

1. On January 10, 2019, Petitioner was sentenced to 21 months in prison for violation of 18 U.S.C. 371.

2. On May 23, 2019, Petitioner sought administrative remedy for this issue through the Warden at FPC Loretto. The Warden did not respond until August 12, 2019. (discussed infra).

3. On July 24, 2019, Petitioner began the administrative remedy process filing a BP-9 with the Warden. (See Exhibit I)

4. Upon denial of the BP-9, Petitioner filed a BP-10 with the Regional Office. Upon no reply within the time allowed, Petitioner filed a BP-11 with the Central Office in Washington, DC. No response has been provided as of this writing. (See Exhibits K and L)

5. See Administrative Remedy Informal Resolution. This sets out that he can request reduction in sentence. (Exhibit D).

6. Petitioner has suffered from various types of cancer beginning with prostate cancer diagnosed in 2015. This resulted in radical prostatectomy surgery removing entire prostate and associated cancer.

7. On September 4, 2019, a biopsy was performed, more cancer was discovered and a report was sent to FPC Loretto (Exhibit O) on September 9, 2019 (Exhibit P), although Petitioner was not given results until October 25, 2019. Petitioner was informed by staff that no further treatment would be provided and that he could seek treatment after returning to halfway house on or about August 12, **2020.**

8. On October 7, 2019, upon review of a PET scan, spots were discovered on Petitioner's lungs and a treatment protocol was recommended after review of the PET scan results. (See Exhibit Q)

9. On October 25, 2019, and November 14, 2019, Paul N. Manson, MD, Tusha's Johns Hopkins surgeon and treating physician before surrender, wrote FCI Loretta and stressed the need for treatment of these conditions (Exhibits M and N). Johns Hopkins Medicine Letter dated 11-25-2019 states: "Simon has a history of invasive lesions which have been diagnosed as atypical lesions, but they are actually regressed invasive melanomas. He should always have complete excisions of such lesions and evaluation of the excised biopsies by competent pathologists who are pigmented lesion experts familiar with his history."

10. The BOP is of the opinion that Petitioner can wait until he is released on August 12, 2020 to obtain treatment for these cancers (Exhibit R). There is no medical protocol that suggests waiting 10 months to treat growing cancers is an appropriate treatment regimen. In fact, spots on the lungs which are likely cancerous, are the most serious with respect to early detection and treatment. This condition along with the confirmed regressed invasive melanomas, require immediate treatment for Petitioner, to prevent metastasis and potential imminent death.

III

ARGUMENT

Courts have held that the "administrative appeals process is unavailable to an inmate when he fails to receive a response or a decision on his grievances." *Small v. Camden County*, 728 F.3d 265 (3rd Cir. 2013) Id. at 273. The Court also held that when the Superintendent failed to respond at the second level of the process, "The administrative process was not available." Id. at 273-74. In this case, despite no response from the Warden, Petitioner continued filing up the chain and completed his BP-11 as though he had received answers. As of this writing, Petitioner has not received a response from the Central Office. Petitioner takes the position as set forth in Small, supra.

18 USC §3582(c)(1)(A) states:

"(A) the Court, upon motion of the Director of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such request by the Warden of the defendant's facility, whichever is earlier."

The Warden failed to respond within the 30-day time limit.

18 USC §3582(c)(1)(i) states:

"extraordinary and compelling reasons warrant such a reduction;"

In this case, the extraordinary and compelling reasons are Petitioner's life-threatening untreated cancers that are now growing and proven by medical experts and tests to exist. Time is of the essence for Petitioner, and the BOP indifference to Tusha's medical needs, if not dealt with, will result in metastasis and imminent death. Granting an Order requiring the BOP to provide the Petitioner with competent medical care to continue the treatment for his condition as his Doctor has said that he requires, or otherwise arranging for treatment to be given by Dr. Manson, either by modifying Tusha's sentence by releasing him to a halfway house in the proximity of John Hopkins, or to home confinement, are the only reasonable alternatives. Moreover, Tusha's medical insurance can pay the cost of this treatment, thus relieving the BOP of that medical expense.

## REMEDIES

18 USC §3582 requires that BOP Policy Statements be consistent with the First Step Act. Pub. L. 115-391,132 Stat 5194.

BOP Policy Statement 7310.04 (12/16/18) appears to directly address the instant issues before the Court.

"Inmates with medical conditions or disabilities can be considered for community placement. These inmates are required to assume financial responsibility for their healthcare while assigned to community programs or home confinement."

See also, *U.S. v. Beck*, 1:13-CR-186-6, 2019 WL 2716505, (M.D.N.C. June 28, 2019), a case virtually on point. There the defendant Beck, while serving her sentence was diagnosed with breast cancer, and the treatment she received from the BOP did not meet the standard of care that could have been provided. The Court there held that reduction of the defendant's prison sentence was in line with the First Step Act 2018, the sentencing guidelines and the Commission's intent, as the level of health care the BOP was providing to the defendant to treat her breast cancer was "abysmal," and met the requirement of "extraordinary and compelling reasons" warranting a reduction of her sentence to time served. The care the BOP provided to Ms. Beck included lengthy delays in ensuring that she was seen by a competent doctor, resulting in the spread of the disease and a requirement of "a radical mastectomy." The delays in treatment that she received resulted in a greater risk of the spread of the disease, and the potential loss of her life. *Beck*, at 7. In the current case before the Court, Mr. Tusha has experienced similar delays in receiving treatment from the BOP, including lengthy delays between appointments to see the Doctor for treatment of his recurring Melanoma and no prospect of further treatment until June of 2020, Tusha's halfway house release date.

BOP Policy Statement 7320.01 (9/6/95) states:

"ordinarily, the length of placement is limited to the last 10 per cent of the inmate's term to be served or six months, whichever is less. An exception is provided for inmates with sentences of more than 12 months but not more than 30 months ... These inmates can be considered for home confinement." It is thus clear that the BOP has the authority to grant Tusha's request, but chooses not to do so, despite its own recognition of Tusha's metastatic cancer condition.

CONCLUSION

For all the foregoing reasons, Tusha requests this Court to GRANT the requested relief and to issue Orders as follows:

(A) Issue an ORDER requiring that the BOP take immediate action and schedule appointments with Johns Hopkins physicians for treatment of Tusha's cancers;

(B) Release of Tusha to home confinement or to a halfway house in Baltimore, Maryland, each of which is within walking distance of the Johns Hopkins Hospital and his treating physicians;

(C) Expedited review and/or hearing and argument of this Motion for the reasons stated.

Respectfully submitted,

GREENFIELD & KRAUT

/s/ Stanley W. Greenfield, Esq.

Stanley W. Greenfield, Esquire

PA I.D. No. 00622

6315 Beacon Street

Pittsburgh, PA 15217

(412) 261-4466